THE TRANSIT.

(District Court, S. D. New York. October 1, 1906.)

COLLISION—STEAMTUGS NEAR JERSEY CITY DOCKS—NEGLIGENT LOOKOUT.

A collision between two tugs off Jersey City, near the ends of the piers, *held* due solely to the fault of one, which had just left a slip and taken a circling course, in not maintaining a proper lookout and keeping out of the way of the other, which was on a course straight up the river to a nearby wharf, and necessarily near the end of the piers, and which was unable to determine the course of the first, but gave her two signals, which were not heard.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 203.]

In Admiralty. Suit for collision.

James J. Macklin, for libellant.

Armstrong, Brown & Boland, for the Transit.

ADAMS, District Judge. On the 2nd day of February, 1906, a collision occurred between the steamtug Stella and the steamtug Transit off the Morris Canal Basin, Jersey City. The Stella was going up the river in the vicinity of the ends of the piers, being bound for a wharf near by to attend a dredge lying at the foot of Morris Street. The Transit had taken a tow of loaded canal boats to the Gamecock Dock and made them fast, from where the tow trailed down the river with an ebb tide, bringing the stern of the tow about opposite the Packer Dock. She then went up to Morris Street for orders and having obtained them, circled around from Morris Street to rejoin her tow, at an average speed of 5 or 6 miles per hour. At this time the Stella was coming up the river, at the rate of about 3½ miles per hour, and the boats came into collision off the basin about 150 feet outside of the ends of the piers, the Transit striking the Stella a severe blow on the starboard side about amidships and cutting into her to such an extent that sinking was only averted by her being beached on the flats in the Morris Canal Basin.

The Stella was a small tug, 74 feet long. She had her master and engineer on duty at the time, the master both running the engine, which was arranged so as to be operated in the pilot house, and steering the boat, the engineer doing the firing. The Transit was a large and powerful tug, then under command of her pilot, with two deck hands on deck, but neither specially assigned to lookout duty. There was also an engineer on duty in the engine room.

The Stella urges that the collision was caused by the Transit not

seeing the Stella in time. The Transit claims that the Stella was in fault (1) for not keeping out of the way of the Transit; (2) in following the pier ends closely for a half to three quarters of a mile; (3) in not reversing.

It appears that the Stella saw the movements of the Transit and blew her two signals of two blasts each as the Transit was circling around to indicate that the Stella would pass inshore. The Transit, however, did not hear the Stella's signals, nor see her until they were about in collision, when she reversed but too late to be of any avail. I think the Transit was in fault in this respect. If she had been more observant she could easily have seen what the Stella was intending to do and performed her own duty of keeping out of the way.

With reference to the alleged faults of the Stella: (1) It does not appear how it was her duty to keep out of the way. While she had the Transit on her starboard hand, after the latter crossed her bow in leaving Morris Street, the Transit had no course which the Stella could depend upon for the purpose of avoiding her. (2) The Stella was unavoidably near the ends of the piers in performing her necessary movements. She could not be expected to go out into the river, considering the short distance she had to traverse. (3) It did not appear that it could be seen on the Stella that reversing would have been of any avail. If she committed any error in this respect, it was not such as to amount to a legal fault. She could not correctly determine where the Transit would go in her circling course, even if it could be supposed that she would continue it into collision. The Stella was justified in believing that the Transit would exercise ordinary prudence in trying to avoid her.

Decree for the libellant, with an order of reference.